IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

EDWARD AND MARTHA HEIMANN,

        Petitioners,

v.                                             CV 14-757 KG/WPL

UNITED STATES GOVERNMENT,
through TOM VILSACK, Secretary of the
U.S. Department of Agriculture, and the
FARM SERVICE AGENCY, a subdivision
of the U.S. Department of Agriculture,

        Respondents.

MEMORANDUM OPINION AND ORDER

This matter is before the Court on Edward and Martha Heimann's Petition for Judicial

Review Administrative Appeal of the Federal Agency FSA.  (Doc. 1).  The Heimanns request

review of the final adverse Director Review Determination from the National Appeals Division

("NAD"),[1] dated July 16, 2014, under 5 U.S.C. § 706(2) of the Administrative Procedure Act

("APA"), 7 C.F.R. § 11.13 of the United States Department of Agriculture ("USDA")

regulations, and the Due Process Clause of the Fifth Amendment.  (Doc. 1) Ex. 1 at 1-6.

Defendant United States, on behalf of the USDA and the Farm Service Agency ("FSA"), filed a

Motion to Dismiss on November 8, 2014.  (Docs. 4-5).  The parties later each filed cross motions

for judgment on the record on May 20, 2015; responses on June 19, 2015; and replies on July 6,

2015.  (Docs. 24-27, 29-30, 32).  For the reasons explained below, the Court grants the

Heimann's motion for judgment on the record and denies the United States' motions.

---

[1] NAD is the appellate body within the USDA that handles all administrative appeals from the
various USDA agencies, including FSA.  *See* 7 C.F.R. § 11.2.

*A.  Background*

In August 2008, the Heimanns sought to purchase a farm in Chaves County, New

Mexico.  (Administrative Record ("AR") 236).  On August 12, 2008, the Heimanns signed a

Preferred Lender Application for Guarantee with FSA.  (AR 1345-46).  The Application for

Guarantee contained the following provision:

> The loan applicant certifies and acknowledges that any amounts paid by FSA on
> account of the liabilities of the guaranteed loan borrower will constitute a Federal
> debt owing to FSA by the guaranteed loan borrower.  In such case, FSA may use
> all remedies available to it, including offset under the Debt Collection
> Improvement Act, to collect the debt from the borrower.  The Agency's right to
> collect is independent of the lender's right to collect under the guaranteed note
> and will not be affected by any release by the lender of my (our) obligation to
> repay the loan.  Any agency collection under this paragraph will not be shared
> with the lender.

(AR 1345).

Meanwhile, on August 15, 2008, the Heimanns took out a line of credit in the amount of

$100,000 from Bank of America ("B of A"), secured by crops and inventory.  (AR 1731-42).  On

September 30, 2008, the Heimanns received three more loans from B of A, for the following: 1)

a $949,000 bridge loan for the purchase of the farmland in Chavez County, secured by the

farmland; 2) $175,000 for the purchase of farm equipment, secured by the equipment, and 3) a

$505,000 loan, secured by the Heimann's house in Lincoln County.  (AR 1745-90).  On

November 3, 2008, the Heimanns signed a Farm Loan Agreement with B of A in the amount of

$949,000 that paid off the bridge loan, and they executed a mortgage for B of A, with the

farmland as security.  (AR 574-86).  FSA issued a Loan Guarantee for the $949,000 loan on

January 7, 2009, but not for the remaining three loans that totaled $780,000.[2]  (AR 2100-01).

FSA also obtained a second lien on the equipment, crops, and inventory.

   Later in 2009, the Heimanns defaulted on all four loans with B of A.  (AR 238).  B of A

filed two state foreclosure actions on the loans.  (AR 313-18, 1615).  FSA was not a party to

these actions.  (*See id.*)  The Heimanns and B of A later resolved their loan dispute by mediation,

signing a Settlement Agreement and Mutual Release on April 29, 2013, "[w]ithout FSA's

knowledge or approval."  (Doc. 1) Ex. 2 at 9-14; (AR 239).  The Heimanns and B of A settled

the debts for $1.1 million.  (Doc. 1) Ex. 2 at 9.

   The settlement provided that B of A "agrees to release its liens and mortgages against the

real and personal property owned by the [Heimanns] and not to otherwise pursue its legal

remedies pursuant to the notes and mortgages with the [Heimanns]."  (*Id.*)  Pursuant to the

agreement, B of A also "releases, forever discharges, and acquits [the Heimanns] . . . from all

claims, suits, costs, debts, demands, actions and causes of action which each had or might have

had against the other as of the date this Agreement is executed, for all damages, known or

unknown, arising out of or in any way related to the claims which were made or could have been

made regarding, arising out of or in any way relating to the Action."  (*Id.*)

   The Heimanns procured the $1.1 million for the settlement by selling the Chaves County

farm and the farm equipment.  (AR 1617-25, 2018-21).  B of A released its mortgages and liens

on the collateral.  (AR 1612-14).

   B of A submitted a Guaranteed Loan Report of Loss to FSA on July 31, 2013, in the

amount of $399,591.77.  (AR 2102-03).  B of A applied $644,831 of the settlement to the

guaranteed loan, representing, according to B of A, the approximate value of the land.  (AR

---

[2] The FSA guaranteed loans cover ninety percent of the value of the loan.  Here, FSA thus
guaranteed the loan up to $854,100.  (AR 2100).

2103).  B of A subtracted the $644,831 from the outstanding value on the loan ($949,000

principal + $18,244.68 accrued interest = $967,244.68), and added half of its attorneys' fees

($231,656.78 / 2 = $115,828.39) and half the appraisal costs ($11,497.58 /2 = $5,748.79), for a

total of $443,990.86.[3]  (AR 2102); (Doc. 1) Ex. 2 at 20.  B of A then multiplied this number by

ninety percent to calculate the total maximum loss payable by FSA of $399,591.77.  (*Id.*)  FSA

approved payment of $327,591.77 on September 12, 2013, subtracting $72,000 from B of A's

total loss claim based on the Heimann's failure to purchase a mobile home trailer pursuant to the

original loan agreement.  (AR 2104); (Doc. 1) Ex. 2 at 21.

On September 19, 2013, FSA notified the Heimanns by certified mail that they had a

delinquent federal debt in the amount of $327,591.77.  (AR 1354-57).  FSA demanded payment

of this sum by October 18, 2013, to avoid debt collection activities, such as centralized offset and

non-centralized administrative offset procedures.  (AR 1354-55).  In particular, the Heimanns

would likely experience offset against their tax refunds.  (Doc. 26) at 19.  However, FSA

informed the Heimanns that they had "the right to inspect and copy Agency records, to make

other arrangements for repaying your debt and to request an appeal of this demand for payment

to the National Appeals Division (NAD)."  (AR 1356).

FSA received an appeal of the demand for payment on October 17, 2013, in the form of a

letter by the Heimann's attorney.  (AR 2070-73).  Upon receiving notice from a representative of

the NAD that the Heimanns must personally sign a written request for appeal, the Heimann's

attorney had the Heimanns sign the letter, which FSA received on November 13, 2013.  (AR

2074-77).  The appeal process then commenced before a hearing officer of the NAD.  The

Hearing Officer issued a decision in favor of the Heimanns on June 12, 2014, finding error in

---

[3] B of A also applied $175,000 of the settlement proceeds to the $175,000 equipment loan;
$72,169 to the $100,000 line of credit; and $208,000 to the $505,000 loan.  (Doc. 1) Ex. 2 at 20.

FSA's demand for payment.  (Doc. 1) Ex. 2 at 15-30.  FSA appealed this decision to the Director

of the NAD for a final determination.  The Director reversed the Hearing Officer's decision on

July 16, 2014.  (Doc. 1) Ex. 1 at 1-6.

*B.  Standard of Review*

Upon receiving a final determination from an agency, a United States District Court may

review the relevant administrative actions.  7 C.F.R. § 11.13.  Judicial review of administrative

actions is governed by Section 706 of the Administrative Procedure Act.  *Olenhouse v.*

*Commodity Credit Corp.*, 42 F.3d 1560, 1573 (10th Cir. 1994).  This section provides that

> The reviewing court shall—
> (2) hold unlawful and set aside agency action, findings, and conclusions found to
> be—
>> (A) arbitrary, capricious, an abuse of discretion, or otherwise not in
>> accordance with law;
>> (B) contrary to constitutional right, power, privilege, or immunity;
>> (C) in excess of statutory jurisdiction, authority, or limitations, or short of
>> statutory right;
>> (D) without observance of procedure required by law;
>> (E) unsupported by substantial evidence in a case subject to sections 556
>> and 557 of this title or otherwise reviewed on the record of an agency
>> hearing provided by statute; or
>> (F) unwarranted by the facts to the extent that the facts are subject to trial
>> de novo by the reviewing court.

5 U.S.C. § 706(2).  Further, "the court shall review the whole record or those parts of it cited by

a party."  (*Id.*)

"'[A]n agency's decision is entitled to a presumption of regularity, and the challenger

bears the burden of persuasion.'"  *Biodiversity Conservation Alliance v. Jiron*, 762 F.3d 1036,

1060 (10th Cir. 2014) (quoting *San Juan Citizens Alliances v. Stiles*, 654 F.3d 1038, 1045 (10th

Cir. 2011)).  The court shall review legal determinations *de novo*, yet give "substantial

deference" to an agency's interpretation of its regulations.  *Lockheed Martin Corp. v. Admin.*

*Review Bd.*, 717 F.3d 1121, 1129 (10th Cir. 2013); *Biodiversity Conservation Alliance*, 762 F.3d at 1060.

*C. NAD Appeal Determination*

On June 12, 2014, an NAD Hearing Officer released her appeal determination regarding the Heimann's challenge to FSA demand for payment.  (Doc. 1) Ex. 2 at 15-30.  The parties agreed at a prehearing conference that the Hearing Officer had three questions to resolve: 1) whether FSA was bound by the Settlement Agreement between the Heimanns and B of A, 2) whether the Heimanns owe FSA a federal debt, and 3) if so, whether FSA correctly determined that the Heimanns owe $327,591.77.  (*Id.*) at 16.

The Hearing Officer concluded that FSA was not bound by the Settlement Agreement between the Heimanns and B of A because FSA was not aware of the mediation, was not mentioned in the Settlement Agreement, and was unaware of the Settlement Agreement until B of A submitted its loss claim.  (*Id.*) at 21.

Next, the Hearing Officer determined that the Heimanns do not owe FSA a federal debt because FSA did not pay B of A based on any outstanding liabilities of the Heimanns.  (*Id.*) at 22.  The Hearing Officer noted, "If a default cannot be cured after mediation and consideration of available servicing options, a lender is typically required to proceed with liquidation."  (*Id.*); *see* 7 C.F.R. § 762.149(a).  The Hearing Officer found that a loss claim requires the liquidation[4] of assets under FSA's regulations and that such liquidation never occurred.  (Doc. 1) Ex. 2 at 22.  FSA's Handbook interpreting the liquidation regulations at 7 C.F.R. § 762.149 provide that all lenders that are unable to resolve a loan problem through restructuring must liquidate the loan as follows: 1) give the borrower notice that the loan will be liquidated, 2) accelerate the note, 3)

---

[4] Liquidation "is the act of selling security for recovery of amounts owed to the Agency or lender."  7 C.F.R. § 761.2.

prepare a liquidation plan, 4) submit an estimated loss claim with the liquidation plan, 5) liquidate the security, and 6) submit a final loss claim.  FSA Handbook 2-FLP (Revision 1) at 311.  An FSA representative conceded during hearings before the Hearing Officer that liquidation of the Heimann's property did not occur according to these steps in its rules and regulations.  (Agency Representative Testimony, HA, Track 6, 2:40:00-2:43:21).  The Hearing Officer pointed out that before submitting a loss claim to FSA, the Heimanns and B of A instead settled and released the Heimann's liabilities for a set sum, which could have been satisfied by selling the properties or any other number of methods, including winning the lottery.  (*Id.*)

Further, the Hearing Officer concluded that the provision of the Code of Federal Regulations that allows a lender to seek a loss claim from FSA does not apply to this situation because it only applies to remaining liabilities after debts are properly liquidated.  (*Id.*) at 23.  Specifically, the Hearing Officer noted that 7 C.F.R. § 762.149(m), Establishment of Federal Debt, is contained within the regulation on liquidation: "Any amounts paid by the Agency on account of liabilities of the guaranteed loan borrower will constitute a Federal debt owing to the Agency by the guaranteed loan borrower."

The Hearing Officer also found that the Heimann's had no existing liabilities at the time B of A submitted its loss claim to FSA because B of A had already extinguished these liabilities through the Settlement Agreement.  (*Id.*)  Thus, FSA's obligations as a guarantor were extinguished as well.  (*Id.*)  The Hearing Officer determined that the absence of the word "liability" in the Settlement Agreement and Mutual Release did not mean that B of A did not release the Heimanns of liability.  (*Id.*) at 24.  She noted that the plain meaning of the word "liability" is "moneys owed; *debts* or pecuniary obligations," and concluded that the Guaranteed Loan was a liability released by the Settlement Agreement.  (*Id.*)  The Hearing Officer further

determined that B of A failed to follow FSA regulations on releases of liability under 7 C.F.R. §

762.146(b) and (c), which require written consent of FSA to release liabilities.

The Hearing Officer noted a new argument brought by FSA in its closing arguments that

NAD does not have jurisdiction to determine the validity of a loss claim because a decision by B

of A adverse to the borrower is not a decision of FSA and is, therefore, not appealable.  (*Id.*) at

24.  FSA had cited *Ortiz v. Farm Service Agency*, National Appeals Division (NAD) Case No.

2014W000070, for the proposition that when FSA pays a lender a loss claim, FSA can require

the appellant to repay the amount, and the NAD does not have jurisdiction to consider the

existence and amount of that debt.  The Hearing Officer declined to adopt this perspective,

finding that FSA's decision that the Heimanns owe a federal debt is adverse to the Heimanns,

and the NAD, therefore, has jurisdiction to determine whether a debt exists.  (*Id.*)  In addition,

the Hearing Officer found *Ortiz* distinguishable because it involved proper liquidation

proceedings.

Finally, the Hearing Officer found that B of A improperly distributed the proceeds from

the sale of the farmland and equipment to the four loans instead of applying them to the farmland

and equipment first, which would have eliminated any loss claim.  (*Id.*) at 25.

*D. Director Review Determination*

Upon review of the Hearing Officer's decision, the Director addressed whether the

Heimanns have a federal debt and whether FSA provided the Heimanns with the required notice

before initiating administrative offset.  (Doc. 1) Ex. 1 at 2.  The Director noted the Hearing

Officer's decision that the Heimanns do not owe a federal debt because B of A and FSA failed to

adhere to applicable regulations in the debt collection process.  (*Id.*) at 4.  The Director then

concluded that the NAD did not have jurisdiction to consider these regulations because NAD's

8

appellate jurisdiction extends only to adverse decisions.  (*Id.*) (citing 7 U.S.C. § 6996(a)).  An "adverse decision" is "an administrative decision made by an officer, employee, or committee of an agency that is adverse to a participant."  7 U.S.C. § 6991(1).  The Director concluded that the only adverse decision in this case is FSA's decision to initiate an administrative offset, not what steps FSA and B of A took during the debt collection process.[5]  (Doc. 1) Ex. 1 at 4.

The Director also concluded that FSA was not a party to the Settlement Agreement and the Settlement Agreement did not cancel the Heimann's obligation to pay based on the Preferred Lender Application for Guarantee.  (*Id.*) at 5.  The Director further found no error in the calculation of the debt.  (*Id.*)  Finally, the Director determined that FSA provided the Heimanns with proper notice of its intent to collect the federal debt through administrative offset procedures.  *See* 7 C.F.R. § 762.149(m).

*E. Discussion*

    *1.   Parties' Arguments*

        *a. The Heimanns*

The Heimanns assert four reasons to reverse the Director's decision: 1) the FSA decision to pay B of A was contrary to law, 2) FSA was arbitrary and capricious in changing its theory of the case, 3) *Ortiz* is distinguishable from the present case, and 4) failing to consider the existence and amount of the debt upon review is a violation of due process under the Fifth Amendment.

Specifically, the Heimanns contend that agency regulations provide that a lender is forbidden from releasing personal liability or collateral in the ordinary course of business without prior FSA approval and that a lender may not release personal liability when collateral is

---

[5] Ironically, had FSA failed to pay B of A's loss claim, the Heimanns would have been brought in as a third party under B of A's appeal to the NAD of FSA's denial of the loss claim.  *See In the Matter of XXXXX*, National Appeals Division (NAD), Case No. 2015W000082; (Doc. 33) at 12.

liquidated without prior FSA approval.  (Doc. 26) at 14 (citing 7 C.F.R. § 762.142(b)(1); §

762.146(b), (c); § 762.149(b)(1)(ii)(B)).  The Heimanns argue that when a lender releases

liability without prior FSA approval, it forfeits any loss claim.  (*Id.*) at 14-15.  The Heimanns

maintain that FSA cannot both concede that FSA and B of A did not follow liquidation

proceedings and also make payment to B of A under 7 C.F.R. § 762.149, which addresses

liquidation.  (*See* Hearing 4/28/14, Track 1, 2:40:00-2:40:28 (FSA conceded that the settlement

did not constitute a liquidation under FSA regulations)).  The Heimanns also point out that an

FSA representative stated in an administrative hearing that if the Settlement Agreement and

Mutual Release had said it released "liabilities" instead of "the note," then the representative

would not have paid the loss claim.  (*See* Hearing 4/17/14, Track 1, 1:54:25-1:55:14).  Yet, the

Heimanns emphasize, FSA also agreed that the Heimann's liability was for the "the loan," and

the loan agreement was the note.  (*Id.* at 2:55:55-2:57:44, 3:17:08-3:22:34).

      The Heimanns also argue that FSA arbitrarily and capriciously changed its theory of the

case in its closing arguments by contending that NAD did not have jurisdiction to consider the

existence and amount of the federal debt.  (Doc. 26) at 15-17.  Next, the Heimanns reiterate the

Hearing Officer's finding that *Ortiz* is inapposite to this case because *Ortiz* occurred in the

context of a liquidation, wherein FSA approved the liquidation plan.  (*Id.*)

      Finally, the Heimanns argue that it is a denial of due process under the Fifth Amendment

to deny a borrower the ability to challenge the existence or amount of a debt based on the fact

that a decision to pay a lender is not in itself adverse.  (*Id.*) at 18-23.  In other words, the

Heimanns maintain that some form of a hearing is required before FSA can deprive them of a

property interest, such as their tax refunds.  (*Id.*) at 19.  The Heimanns cite *In the Matter of*

*XXXXX*, National Appeals Division (NAD), Case No. 2015W000082, as a recent example in

which the NAD found FSA's failure to consider the existence and amount of an underlying debt consistent with a denial of meaningful review.[6]  The Heimanns request that they be allowed to challenge FSA's payment to B of A of the offset or to raise the validity of the underlying payment in appealing the collection action.  (Doc. 26) at 21.

>    b. *The United States*

The United States argues that the sole matter on appeal before NAD was whether FSA properly established a federal debt as a result of paying B of A's loss claim.  (Doc. 25) at 12. The United States asserts that other materials and issues considered before the NAD were extraneous.  (*Id.*)  The United States reiterates the statement from the Preferred Lender Application for Guarantee that FSA's right to collect on a liability is independent of B of A's right to collect under the loan as well as any releases.  (*Id.*) at 12-13.  The United States quotes *Ortiz* for the proposition that "[b]ecause FSA paid Lender a loss claim; the rules allow FSA to require Appellant to repay that amount."  (*Id.*) at 13 (quoting *Ortiz*, (NAD) Case No. 2014W000070)).  Further, the United States maintains that the decision of FSA to pay the loss claim was solely between B of A and FSA and had become final in the absence of an appeal to NAD.  (*Id.*)  The United States proposes that the Heimanns should seek redress, if any, from B of A.  (*Id.*) at 13-14.

With respect to the regulations discussed by the Hearing Officer, the United States suggests that the Heimanns voluntarily "liquidated" their assets and, therefore, B of A did not require FSA's permission prior to signing the release.  (Doc. 27) at 7.

---

[6] The Heimanns filed an Addendum to their reply to provide the Court with the Director Review Determination upholding the NAD's decision in that case.  (Doc. 35).  The United States objected to this supplemental authority on the basis that the case is neither binding nor ripe because the United States will seek reconsideration of the Director Review Determination.  (Doc. 36).  The Court overrules the objection because the Director denied reconsideration on December 22, 2015, making the NAD decision final.

The United States contends that the Heimann's argument that FSA arbitrarily and capriciously changed its theory of the case is inappropriate because that standard of review only applies to the court's review of the Director's decision and not to theories advanced at the administrative hearings.  (*Id.*) at 8.

    2.  *United States' Motion to Dismiss*

As a preliminary matter, the Court notes that the United States filed a Motion to Dismiss on November 8, 2014.  (Docs. 4-5).  The Heimanns did not file a response.  While the United States purportedly bases the Motion to Dismiss on Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction and Rule 12(b)(6) for failure to state a claim upon which relief can be based, the motion instead asks the Court to find that the Director properly applied his interpretation of the agency's regulations.  The United States reiterates this basic argument in the cross-motions briefing.  This Court concludes the United States' request that the Court make a finding that the Director's decision was proper is appropriately considered in the context of the cross motions rather than in a motion to dismiss.  Accordingly, this Court will deny the Motion to Dismiss.

    3.  *NAD's Jurisdiction to Examine Existence/Amount of Loss Claim*

The Court begins its review of the Director's decision by addressing whether the NAD had jurisdiction to examine the existence or amount of the loss claim.  The Director decided that the NAD did not have such jurisdiction and did not consider the Hearing Officer's findings on this subject.  Before addressing the underlying regulations, the Court will examine whether the Director improperly failed to review the existence and amount of the loss claim.

The failure of an administrative agency to hear certain matters during its review process may constitute a violation of procedural due process.  The Fifth Amendment to the United States

Constitution provides, "No person shall . . . be deprived of life, liberty, or property, without due

process of law . . . ."  U.S. CONST. amend. V.  "[S]ome form of hearing is required before an

individual is finally deprived of a property interest."  *Mathews v. Eldridge*, 424 U.S. 319, 333

(1976) (citation omitted).  "The fundamental requirement of due process is the opportunity to be

heard at a meaningful time and in a meaningful manner."  *Id.* (quotation omitted).  In considering

the process due, a court examines the following:

> First, the private interest that will be affected by the official action; second, the
> risk of an erroneous deprivation of such interest through the procedures used, and
> the probable value, if any, of additional or substitute procedural safeguards; and
> finally, the Government's interest, including the function involved and the fiscal
> and administrative burdens that the additional or substitute procedural
> requirement would entail.

*Id.* at 335.

As relevant here, property interests include "ownership of real estate, chattels, or money,"

among other forms of property.  *Bunger v. Univ. of Okla. Bd. of Regents*, 95 F.3d 987, 990 (10th

Cir. 1996).  Courts have found that taxpayers have procedural due process protections in their tax

refunds.[7]  *See, e.g.*, *McClelland v. Massinga*, 786 F.2d 1205, 1211 (4th Cir. 1986); *Romero v.*

*United States*, 784 F.2d 1322, 1324 (5th Cir. 1986); Games *v. Cavazos*, 737 F. Supp. 1368, 1377

(D. Del. 1990).

The Court will examine the due process reasoning in NAD Case No. 2015W000082.  The

Court will not, however, treat this later case as binding precedent.  *See* 73A C.J.S. Public

Administrative Law and Procedure § 352 ("While one administrative law judge (ALJ) may look

to another's decisions for guidance, administrative decisions are not binding on other

administrative law judges, nor are they precedent for the courts."); 7 C.F.R. § 11.10(c) ("All

---

[7] Although the Tenth Circuit has not spoken directly on the matter of procedural due process
rights in a tax refund, the United States does not challenge the existence of such rights.

determinations of the Hearing Officers and the Director must be based on information from the

case record, laws applicable to the matter at issue, and applicable regulations published in the

Federal Register and in effect on the date of the adverse decision or the date on which the acts

that gave rise to the adverse decision occurred, whichever date is appropriate under the

applicable agency program laws and regulations.").

In Case No. 2015W000082, FSA paid a loss claim to the lender, though the lender did

not comply with its lender agreement, conditional commitment, or loan guarantee when it

negligently serviced the loan by advancing funds to the borrower for unauthorized purposes.

(Doc. 33).  The lender had requested permission from FSA to restructure the loan to deal with

appellant's default, but FSA denied the request for restructuring.  The lender submitted a loss

claim on the loan after the appellant had sold the collateral and the proceeds of that sale were

accounted for.  FSA denied the loss claim as submitted, but FSA and the lender later agreed to a

loss claim amount after settlement negotiations.  The Hearing Officer addressed FSA's late

argument that the calculation of the loss claim was without consequence to appellant's appeal on

repaying the loss claim, as the amount of the debt was final and payable under 7 C.F.R. §

762.149(m).  (*Id.*) at 11.

First, the Hearing Officer pointed out that FSA agreed at the prehearing conference that

the Hearing Officer needed to determine whether FSA properly calculated the amount of the loss

claim.  That FSA later argued that the calculation was not relevant to the issue of appeal undercut

the new argument.  The Hearing Officer next noted that adverse decisions, such as the decision

in the Heimann's case, provide that an appeal to NAD "will be limited to the existence of the

debt, and the amount of the debt."  (*Id.*) at 11; (AR 1356).  Finally, the Hearing Officer

determined that FSA's position would deny borrowers meaningful appellate review of a debt

created by FSA's payment of a loss claim.  (*Id.*)  Specifically, the Hearing Officer found that the appellant's "exclusion from the review of the Final Loss Claim deprived a clearly interested party from raising arguments relevant to the propriety and amount of the Final Loss Claim. Appellant's interests were not protected during the review of the Final Loss Claim."  (*Id.*) at 12.

The Director noted that USDA regulations explicitly provide that a borrower who receives a Notice of Intent to Collect by Administrative Offset may "request administrative review of the agency's determination that the debt exists and the amount of the debt."  (Doc. 35) at 5 (citing 7 C.F.R. § 3.62).  The Director agreed with the Hearing Officer that "FSA's cramped reading of NAD's jurisdiction would render the review provisions . . . all but meaningless."  (*Id.*) The Director added that

> the right to due process requires that debtors be provided with an opportunity to obtain review of an agency's predicate actions that directly lead to the creation of the debt at issue.  Due process precludes a judgment from binding a litigant who was not a party to the proceeding that resulted in the judgment and who has not had an opportunity to be heard.  Similarly, a nonparty cannot be bound by an agreement to which it was not a party.

(*Id.*) (citation omitted).

Finally, upon reconsideration, the Director upheld his initial affirmance of the Hearing Officer's decision.  The Director noted that the Debt Collection Improvement Act of 1996 provides that before an agency may collect by administrative offset, the debtor must receive "an opportunity for a review within the agency of the decision of the agency related to the claim." 31 U.S.C. § 3716(a)(3).  Further, debt collection proceedings initiated by FSA "will be conducted by NAD in accordance with 7 CFR part 11."  7 C.F.R. § 3.60(b).  The Director concluded that the borrower properly sought review of both the existence and amount of the debt under one appeal to NAD and that no other appeal proceeding was required to contest the existence and amount of the debt.  The Director reiterated the need for due process in FSA's debt

collection proceedings and rejected an argument by FSA that the borrower could receive relief by other means, such as by taking action against the lender.

This Court adopts the due process reasoning found in 2015W000082, based on well-established procedural due process precedent in the United States.  FSA demanded repayment of a loss claim from the Heimanns without the Heimanns having any opportunity for a hearing on the existence or amount of that loss claim.  To require payment or administrative offset against the Heimann's tax refunds would deprive the Heimanns of property without due process of law. These provisions, 31 U.S.C. § 3716(a), 7 C.F.R. § 3.62, and 7 C.F.R. § 3.60(b), although not briefed by the parties, and NAD's acceptance of the Heimann's appeal as to repayment of the loss claim, together indicate the Heimanns properly brought the question of the existence and amount of the debt before the correct entity.  In addition, this Court notes that, like in 2015W000082, FSA added its jurisdictional argument after the prehearing conference, despite earlier accepting the NAD's ability to examine the debt itself.  Accordingly, the Court finds that the Director's conclusion that the NAD does not have jurisdiction to review the existence and amount of a debt subject to administrative offset is not in accordance with law and is contrary to a constitutional right.

### 4.  Existence and Amount of Debt Subject to Repayment by the Heimanns

The Court applies the deferential standard of review to the Director's decision.  *See IMC Kalium Carlsbad, Inc. v. Interior Bd. of Land Appeals*, 206 F.3d 1003, 1009-10 (10th Cir. 2000); *Four B Corp. v. N.L.R.B.*, 163 F.3d 1177, 1182 (10th Cir. 1998).  This Court concludes that the NAD had jurisdiction to examine the issue of the existence and amount of the loss claim, and the Director failed to address that issue in his Director Review Determination.  Accordingly, this Court will remand the case to the Director for findings on the existence and amount of the loss

claim upon settlement between B of A and the Heimanns.  *See Mickeviciute v. I.N.S.*, 327 F.3d
1159, 1165 (10th Cir. 2003) (quoting *I.N.S. v. Ventura*, 537 U.S. 12, 123 S. Ct. 353, 355 (2002))
(emphasis in original)   ("[T]he proper course, except in rare circumstances, is to remand to the
agency for additional investigation *or explanation*.").

The parties address 7 C.F.R. § 762.149(b), (c), (d), (i), and (m) in the context of consent
to liquidate, whether liquidation occurred, and whether B of A may seek reimbursement from
FSA.  Notably, the parties do not discuss subsection (a) regarding mediation, a section which the
Hearing Officer only briefly mentioned.  (*See* Doc. 1) Ex. 2 at 22.  This provision provides,

> When it has been determined that default cannot be cured through any of the
> servicing options available, or if the lender does not wish to utilize any of the
> authorities provided in this part, the lender must: (3) Not agree to any proposals to
> rewrite the terms of a guaranteed loan which do not comply with this part.  Any
> agreements reached as a result of mediation involving defaults and or loan
> restructuring must have written concurrence from the Agency before they are
> implemented.

7 C.F.R. § 762.149(a)(3).  The Court suggests that, upon remand, the Director request argument
from the parties as to the relevance and impact of this provision.

*F. Conclusion*

Based on the foregoing, the Court GRANTS the Heimann's motion for judgment on the
record (Doc. 26) and DENIES the United States' motion for judgment on the record (Doc. 24)
and motion to dismiss (Doc. 4).  The case is hereby REMANDED to the Director for
proceedings consistent with this Memorandum Opinion and Order.

IT IS SO ORDERED.

_____
UNITED STATES DISTRICT JUDGE